CHARLES E. PATTERSON, AS RECEIVER, ETC., OF THE MERCHANTS AND MECHANICS' BANK OF TROY, APPELLANT, v. DANIEL ROBINSON AND JAMES E. PINKHAM, RESPONDENTS, IMPLEADED, ETC.

*Trustees of a manufacturing corporation* — 1848, *chap.* 40, *sec.* 23 — *to what creditors the trustees, assenting to the contracting of debt in excess of the amount of its capital stock, are liable.*

The construction given by this court (in the decision of this case, reported in 36 Hun, 622) to section 23 of chapter 40 of 1848, to the effect that if the indebtedness of any company organized under such act should at any time exceed the amount of its capital stock, the trustees of such company assenting thereto should be personally and individually liable for such excess *to the creditors of the company to whom such excess is owing,* approved and reaffirmed upon a reargument of the case.

*Hornor* v. *Henning* (93 U. S., 228); *Merchants' Bank of Newburyport* v. *Stevenson* (10 Gray, 232); *Anderson* v. *Speers* (21 Hun, 568), distinguished.

THIS case was brought before the General Term upon an appeal from a judgment in favor of the defendants, entered upon the report of a referee.

The action was brought and a recovery sought against the defendants, as trustees of the Schaghticoke Woolen Mills, under the provisions of section 23 of chapter 40 of 1848. The appeal was decided at the May term of that court, and the opinion then delivered by LANDON, J., is reported in 36 Hun, 622.

The defendants' counsel afterwards moved for a reargument and the court directed a submission of briefs as upon such reargument, and thereupon the following opinion was handed down :

*O. Gambell,* for the appellant.

*Smith, Fursman & Cowen,* for the respondents.

LANDON, J. :

We are asked, upon a motion for a reargument, to reconsider our construction of the twenty-third section of the statute (chap. 40 of 1848), and we are cited to *Hornor* v. *Henning* (93 U. S., 228) ; *Merchants' Bank of Newburyport* v. *Stevenson* (10 Gray, 232) ; *Ander-*

*son* v. *Speers* (21 Hun, 568), as controlling constructions of this and like statutes at variance with the construction adopted by us, to the effect and in the language of the section, that " if the indebtedness of any such company shall at any time exceed the amount of its capital stock, the trustees of such company assenting thereto, shall be personally and individually liable for such excess to the creditors of the company," *to whom such excess was owing.* It seemed to us that the words we have added in *italics,* were required by the language of the section, if response is to be made to the question which this case presents, namely, what creditors?

We saw that this excess of indebtedness was due by the contract of the company, and without regard to the statute, indeed wholly independent of the statute, to the creditors to whom the contract of the company made it due. We felt that no statute could deprive such creditor of the benefit of his contract engagement with the company. Such being the contract relation between the company and such creditor, we thought that when the statute stepped in, and added to the contract liability of the company for such excess of indebtedness, the personal and individual liability of the trustees assenting thereto, it added it to the liability of the company where that liability was placed, namely, to the creditors to whom the company was liable for it. We saw no language in the statute at variance with such a construction, certainly none which seemed to imply that the liability of the assenting trustees for such excess of indebtedness should be diverted from the creditors to whom the company owed such excess, and be donated to, or conferred upon, or shared among the creditors to whom the company did not owe it. And we had the more confidence in this construction, because of our opinion that section 23, unlike some other sections of the act, did not impose this personal liability as a penalty for wrong done or duty omitted, but as the terms upon which such excess of indebtedness might, with safety to the creditors, be permitted to the company. And referring to cases in which somewhat similar provisions of the statutes had received the construction of our Court of Appeals, we felt that the construction adopted by us was in harmony with the construction which that court had already adopted. The cases to which we are now referred were not cited upon the former argument, and in view of the importance of the

case we have consented to reconsider the question with the aid of the able briefs of counsel.

In *Hornor* v. *Henning*, the statute under which the action arose was practically identical with section 23 of our statute. The complaint recited that the Washington City Savings Bank had incurred an indebtedness of $850,000, in excess of its capital stock, to which excess the defendants, its trustees, had assented; that the bank owed the plaintiff $4,000, and by virtue of the statute a cause of action therefor had accrued to him. The plaintiff did not allege that any of the excess of indebtedness had been contracted with him by the bank. The trustees demurred to the complaint. The court sustained the demurrer. The plaintiff's theory, as stated in the opinion of the court, was, that the excess of indebtedness for which the assenting trustees were liable was in the nature of a penalty, and that any creditor could sue the trustees for it without regard to any other creditor, and without regard to the ability of the bank to pay.

The court held that this theory was unsound; that by this statute it was intended that so far as this excess of indebtedness over capital stock was necessary, the trustees who had assented to it should make good the debts of the creditors who had suffered by their breach of trust; that this liability constitutes a fund for the benefit of all the creditors who are entitled to share in it in proportion to the amount of their debts, so far as it would be required to pay them, and that in that aspect of the case an equity action for the benefit of all would be the proper remedy. It does not appear, nor does the learned counsel for the defendants here claim, that the point was presented or considered whether the remedy was given to the creditor to whom the bank had created the debt after its indebtedness exceeded its capital stock.

The court, in the case cited, followed the case of *Merchants' Bank of Newburyport* v. *Stevenson* (10 Gray, 232), in which the statute expressly stated that the liability of the assenting trustees should be " to the extent of such excess for *all* the debts of the company then existing." It is plain that under such a statute *all* the debts of the company stood upon an equal footing, and, of course, all the creditors were interested. The remark of the United States Supreme Court, that the Massachusetts statute was " in the

identical form of words which we are construing in the present case," leads us in view of the marked difference in language between the two statutes, to suppose that in *Hornor* v. *Henning* the case as presented did not call attention to the rights of a creditor to whom by contract the company owed the excess, as distinguished from the rights of all the creditors. *Anderson* v. *Speers* (21 Hun, 568) was, in its essential facts, very much like *Hornor* v. *Henning.* The action was by a creditor, not a creditor to whom the company had contracted the excess, and the defendant demurred because of a defect of parties, in that the other creditors were not joined. The court following *Hornor* v. *Henning* and *Merchants' Bank* v. *Stevenson* sustained the demurrer. The question under examination here does not appear to have been presented or considered.

Passing the case of *Merchants' Bank* v. *Stevenson* as irrelevant because of the language of the Massachusetts statute, we are constrained to say that *Hornor* v. *Henning* and *Anderson* v. *Speers* cannot be considered as authoritative against the claim of a creditor to whom the company contracted the excess of indebtedness in the absence of the consideration by either court of such claim. We do not find ourselves overruled in the construction which we gave to the statute in our former opinion. That construction seems to us to be required by the language of the section, and also supported by the current of authority in this State. (*Weeks* v. *Love*, 50 N. Y., 568.)

If this construction is correct the liability of the assenting trustee is a contract and not a penal liability. The assenting trustee, knowing that the indebtedness of the company has reached at least an amount equal to the capital stock, concurs with the company in contracting further indebtedness. He knows that the statute, in case he assents, makes him also liable. He gives his consent, and thereby under the statute pledges his liability. The statute says to the assenting trustee "you may contract as many debts as you choose to become personally liable for." The learned counsel for the defendants insists that section 23 is in its language similar to section 13, and that it is well settled that the liability under section 13 is penal. (*Merchants' Bank* v. *Bliss*, 35 N. Y., 412.) Section 13 provides that if the trustees "shall declare and pay any

dividend, * * * the payment of which would render it insolvent, or which would diminish the amount of its capital stock, they shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be thereafter contracted, while they shall respectively continue in office."

The section seeks to deter the trustee from despoiling the company to the profit of the stockholder and to the ruin of the creditors. Such a wrong has no connection with the contracting of the debt, but it imperils its payment, and the liability affixed upon the offending trustee may well be called a penalty. There is no such flagitiousness in the act of assenting to an excess of indebtedness over the amount of the capital stock. It may be wise and right, at any rate the intent may be honest. Why affix a penalty upon performance of a good act? Such is not the policy of the law. It may lead to reckless speculation, but speculation is no offense, and the statute prudently tempers the venture for gain by making the assenting trustee a partner with the company in the risk of loss, or more accurately, in liability to such creditor. And if this view is correct, the creditor for the excess cannot be deprived of his recourse to the assenting trustee by any decrease in the aggregate indebtedness of the company, or otherwise than by his own consent or by payment to him.

Upon the reversal of the judgment, we assumed, possibly too readily, that there was no dispute about the material facts, at any rate that the defendants could not hope to have them found more favorably to them. Such being the case, the question was presented, what judgment do the undisputed facts require, and it was proper for us to pronounce that judgment, since there would be no need for a new trial to settle the facts. (*Price* v. *Price*, 33 Hun, 432.)

The defendants' counsel now insists that such is not truly the case. If the referee had pronounced the same judgment against them which we think proper upon these facts, the defendants might have excepted to his conclusions of fact and possibly have procured a reversal thereupon. We are not so firm in the conviction that the defendants cannot better their condition upon a new trial, as to pronounce such trial a needless and merely dilatory effort.

We, therefore, direct that the order be modified so as to direct

that as to the defendants Robinson and Pinkham, the judgment be reversed, the reference discharged, a new trial granted, costs to abide the event.

LEARNED, P. J., and BOOKES, J., concurred.

Judgment modified by granting new trial, referee discharged, costs to abide event.